DA 11-0521

IN THE SUPREME COURT OF THE STATE OF MONTANA

2012 MT 48

SCOTTIE J. PEDERSON and DAWN
PEDERSON, individuals,

      Plaintiffs and Appellants,

  v.

ROCKY MOUNTAIN BANK, and
JOHN DOES 1-X,

      Defendants and Appellees.

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DV 11-284(A)
Honorable Ted O. Lympus, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

          Susan Callaghan, Callaghan and Gernant, P.C., Butte, Montana

      For Appellee:

          Burt N. Hurwitz; Kenneth S. Frazier; Felt, Martin, Frazier & Weldon,
P.C., Billings, Montana

Submitted on Briefs:  January 25, 2012
Decided:  March 6, 2012

Filed:

_____
Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1 Scottie J. Pederson and Dawn Pederson (Pedersons) appeal from an order of the Eleventh Judicial District Court, Flathead County, dismissing their claims against Rocky Mountain Bank (Bank). We affirm.

## BACKGROUND

¶2 In May 2007, the Pedersons and the Bank entered into a six-month construction loan agreement (Construction Loan) pursuant to which the Bank agreed to lend the Pedersons $202,500 for the purpose of purchasing land and placing a manufactured home on the land. The Bank also conditionally approved the Pedersons for a 30-year mortgage at a 6% interest rate.

¶3 In September 2007, the Pedersons finished construction on the property and tried to close on the conditionally approved mortgage. The Bank refused to close because Scottie Pederson's credit had markedly deteriorated since May 2007. The parties then began negotiating an alternative financing mechanism to enable the Pedersons to pay off the Construction Loan. On November 4, 2007, the Construction Loan matured and the Bank did not extend it. Instead, the Bank began reporting to the credit agencies that Scottie was delinquent on the Construction Loan.

¶4 On March 10, 2008, the Pedersons and the Bank agreed to finance the Construction Loan through three short term loans totaling $217,000 at a 7% interest rate. These loans included: (1) a $170,000 loan, payable in five years with a possibility of refinancing; (2) a

$37,000 "clean up" commercial loan with a six month term; and (3) a $10,000 line of credit. The Pedersons made imperfect payments on these loans through 2008 and 2009.

¶5    In August 2009, the Pedersons tried to refinance their loans but were unable to do so. At this point, the Pedersons allegedly discovered Scottie's credit score had markedly deteriorated, the Bank had yet to release the deed of trust securing the Construction Loan, the manufactured home had yet to be detitled, and the Bank had not advised the Pedersons of other available financing options to pay off the Construction Loan.

¶6    As a result of these discoveries, the Pedersons brought suit against the Bank asserting claims for negligence, constructive fraud, negligent misrepresentation, a violation of the Consumer Protection Act, common law bad faith, and punitive damages. The Pedersons' attorney signed the complaint on March 10, 2011, but failed to file the complaint until March 14, 2011. After it was served with the complaint, the Bank filed a Rule 12(b)(6), M. R. Civ. P., motion to dismiss asserting the statutes of limitations had run on all of the Pedersons' claims. The District Court granted the Bank's motion and dismissed the Pedersons' claims against the Bank. The Pedersons raise one issue on appeal:

¶7    *Did the District Court err when it granted the Bank's motion to dismiss because the statutes of limitations had run?*

## STANDARD OF REVIEW

¶8    We review de novo a district court's ruling on a Rule 12(b)(6), M. R. Civ. P., motion to dismiss. *Spencer v. Beck*, 2010 MT 256, ¶ 7, 358 Mont. 295, 245 P.3d 21. In our review, we look only at the allegations in the complaint. *See Plouffe v. State*, 2003 MT 62, ¶ 13, 314

3

Mont. 413, 66 P.3d 316. We will affirm a district court's dismissal of a complaint for failure to state a claim only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Spencer*, ¶ 7. In considering a Rule 12(b)(6), M. R. Civ. P., motion, the complaint is construed in the light most favorable to the plaintiff, and all allegations of fact are taken as true. *Spencer*, ¶ 10.

## DISCUSSION

¶9 An action generally is barred if it is not commenced within the appropriate statute of limitations. *Weaver v. Advanced Refrigeration*, 2011 MT 174, ¶ 17, 361 Mont. 233, 257 P.3d 378. An action is commenced when the complaint is filed. Section 27-2-102(1)(b), MCA.

¶10 The applicable statutes of limitations for the causes of action in the Pedersons' complaint are as follows: three years for negligence claims, including negligent misrepresentation, *Cechovic v. Hardin & Assocs.*, 273 Mont. 104, 119, 902 P.2d 520, 529 (1995) (citing § 27-2-204(1), MCA); three years for a claim of common law bad faith, *Brewington v. Employers Fire Ins. Co.*, 1999 MT 312, ¶¶ 23-24, 297 Mont. 243, 992 P.2d 237; and two years for the claims of constructive fraud and a violation of the Consumer Protection Act, *Osterman v. Sears, Roebuck & Co.*, 2003 MT 327, ¶¶ 20, 24, 318 Mont. 342, 80 P.3d 435.

¶11 Our statute of limitations analysis is governed by § 27-2-102, MCA, which provides in pertinent part:

4

**27-2-102. When action commenced.** (1) For the purposes of statutes relating to the time within which an action must be commenced:

(a) a claim or cause of action accrues when all elements of the claim or cause exist or have occurred, the right to maintain an action on the claim or cause is complete, and a court or other agency is authorized to accept jurisdiction of the action;

(b) an action is commenced when the complaint is filed.

(2) Unless otherwise provided by statute, the period of limitation begins when the claim or cause of action accrues. Lack of knowledge of the claim or cause of action, or of its accrual, by the party to whom it has accrued does not postpone the beginning of the period of limitation.

(3) The period of limitation does not begin on any claim or cause of action for an injury to person or property until the facts constituting the claim have been discovered or, in the exercise of due diligence, should have been discovered by the injured party if:

(a) the facts constituting the claim are by their nature concealed or self-concealing; or

(b) before, during, or after the act causing the injury, the defendant has taken action which prevents the injured party from discovering the injury or its cause.

Section 27-2-102(2), MCA, is commonly referred to as the accrual rule, and § 27-2-102(3), MCA, is commonly referred to as the discovery rule.

¶12 The Pedersons assert the District Court did not properly apply the accrual rule. The Pedersons signed the loan agreements on March 10, 2008, but argue the claim did not accrue until March 14, 2008. The Pedersons cite to the fact that their loans were subject to a three day right of rescission, and, therefore, the Bank was not obligated to disburse the loans until March 14, 2008. Due to this fact, the Pedersons believe the damages element of their claim was not met, and their claim did not accrue until March 14, 2008, at the earliest.

¶13 The Pedersons' argument merits little deference because it is unsupported by the allegations in their complaint. Nowhere do the Pedersons allege the agreements were not

5

binding until March 14, 2008, or that the funds were not disbursed until March 14, 2008. For this reason alone, we find the claim accrued when the Pedersons signed the loan documents on March 10, 2008.

¶14 Even if we were to accept that the three-day right of rescission was pled, the Pedersons' claims would still fail. When the Pedersons signed the loan agreements, the Bank was obligated to provide funds once certain conditions were met and the Pedersons were required to pay back the funds once they were distributed. Thus, we find the element of damages existed at the time the Pedersons signed the loan agreement, March 10, 2008, and not upon the disbursement of funds.

¶15 The Pedersons also argue that the District Court erred in not applying the discovery rule to toll the statutes of limitations until August 2009. To support their position, the Pedersons rely on *Blackburn v. Blue Mt. Women's Clinic*, 286 Mont. 60, 79, 951 P.2d 1, 12 (1997), for the proposition that non-disclosure of information is, by its very nature, self-concealing. In *Blackburn*, the plaintiff was advised by a nurse employed by Butte-Silver Bow County that, even though she was HIV negative, she could give birth to an HIV positive child. Based on this information, the plaintiff went to the Blue Mountain Women's Clinic in Missoula to obtain an abortion. Prior to her abortion, the plaintiff advised a counselor of her reason for having an abortion, and, according to the plaintiff, she was never advised that it was impossible for an HIV negative mother to give birth to an HIV positive baby. The plaintiff underwent an abortion in 1990, but did not bring suit until 1995, at which point the

defendant filed a Rule 12(b)(6) motion to dismiss because the applicable statutes of limitations had run. *Blackburn*, 286 Mont. at 65-67, 951 P.2d at 4-5.

¶16     The district court agreed with the defendant that the statutes of limitations had run and dismissed the plaintiff's complaint. *Blackburn*, 286 Mont. at 67, 951 P.2d at 5. On appeal, this Court reversed and concluded that the negligent act was the withholding of accurate medical information, and, in light of this fact, noted that "[n]ondisclosure of information is, by its nature, self-concealing." *Blackburn*, 286 Mont. at 79, 951 P.2d at 12.

¶17     Based on the facts before us, the holding in *Blackburn* is inapposite. A more analogous case is *Shiplet v. First Security Bank of Livingston, Inc.*, 234 Mont. 166, 762 P.2d 242 (1988) (overruled on other grounds by *Sacco v. High Country Indep. Press, Inc.*, 271 Mont. 209, 896 P.2d 411 (1995)). In *Shiplet*, First Security Bank represented to the Shiplets that it would loan them money at a rate of 10% for a term of five years. The Shiplets then signed a note containing neither the promised term nor the promised interest rate. This Court held that when the Shiplets signed the note, "They had at that point certainly discovered facts sufficient to constitute fraud," and the statute of limitations had not been tolled. *Shiplet*, 234 Mont. at 174, 762 P.2d at 247.

¶18     In light of this Court's holding in *Shiplet*, we conclude that the applicable statutes of limitations should not have been tolled. The Pedersons knew as early as September 2007 that Scottie's credit had markedly deteriorated, and they would not be able to obtain conventional financing. To prevent losing their home, the Pedersons signed the new loan agreements whereby they would receive three loans totaling $217,000 under the specific

7

terms of the loan agreements. At that point, the Pedersons knew they would not receive a 30-year mortgage at a 6% interest rate.

¶19 The Pedersons further argue that we should toll the statutes of limitations because they were unaware of other loan opportunities, and were unaware that the Bank had not released the deed of trust or de-titled to property until August 2009. However, the relationship between a bank and its customer is generally described as that of debtor and creditor, and does not give rise to fiduciary responsibilities, unless the bank takes on the role of an advisor or an agency relationship exists. *McCoy v. First Citizens Bank*, 2006 MT 307, ¶ 30, 335 Mont. 1, 148 P.3d 677; *See also Klein v. First Edina Natl. Bank*, 196 N.W.2d 619, 623 (Minn. 1972) ("[W]hen a bank transacts business with a depositor or other customer, it has no special duty to counsel the customer and inform him of every material fact relating to the transaction"). Mere ignorance of the facts will not toll the statutes of limitations. *Cartwright v. Equitable Life Assur. Socy. of the United States*, 276 Mont. 1, 15, 914 P.2d 976, 985 (1995).

¶20 The allegations in the Pedersons' complaint do not demonstrate the existence of a fiduciary relationship. Consequently, the Bank had no obligation to disclose every alternative loan that the Pedersons may have obtained. The Pedersons have additionally failed to show that it was not more than mere ignorance that prevented them from discovering the facts earlier than August 2009. Accordingly, on March 10, 2008, when the Pedersons signed the loan agreements, they had discovered the facts constituting their claims.

# CONCLUSION

¶21    The applicable statutes of limitations began to run on March 10, 2008, because the Pedersons' claims had accrued and they had discovered the facts constituting the claims. By filing their complaint on March 14, 2011, more than three years later, the Pedersons failed to commence their action within any of the applicable statutes of limitations.  For this reason, we affirm the District Court's order dismissing the Pedersons' claims.


/S/ MICHAEL E WHEAT


We Concur:

/S/ BRIAN MORRIS
/S/ JIM RICE
/S/ JAMES C. NELSON
/S/ BETH BAKER